James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Nikomarin Shipping Co Ltd*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIKOMARIN SHIPPING CO LTD,
individually by special limited appearance and as owner on behalf of
M/V NIKOMARIN (IMO No. 9401506),

          Plaintiff,

- against -

ARTE BUNKERING OU,

          Defendant.

---

22 Civ. _____ ( )

**COMPLAINT**

Plaintiff Nikomarin Shipping Co Ltd ("Nikomarin" or "Plaintiff"), by and through its attorneys Holland & Knight LLP, brings this action for declaratory relief pursuant to 28 U.S.C. § 2201 and alleges, upon information and belief, as follows:

## THE PARTIES

1. Plaintiff Nikomarin is a corporation or business entity organized and existing pursuant to the laws of Cyprus, with an office and place of business at Archiepiskopou Makariou III, 228 Ayios Pavlos Court, Block B, 4th Floor, Office 411/412, 3030 Limassol, Cyprus.

2. The vessel M/V Nikomarin (the "Vessel"), IMO No. 9401506 is the sole asset of Nikomarin, and is a bulk carrier flagged in Cyprus.

3. Defendant Arte Bunkering OU ("Arte") is a corporation or business entity organized and existing pursuant to the laws of a foreign country, with an office and place of business at Swiss House, Roosikrantsi 11, 10119 Tallinn, Estonia.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201(a). This is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

5. This Court has personal jurisdiction over defendant Arte because they have threatened arrest of the Vessel in the United States, and the Vessel is reasonably believed to be at risk of entering the District and facing arrest by Arte in the near term.

6. Further, Plaintiff, as owner of the Vessel, voluntarily submits this *in rem* lien claim to the jurisdiction of this Court, obviating the need for seizure of the Vessel to confer jurisdiction.[1]

7. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

8. Plaintiff Nikomarin is the owner of the vessel M/V Nikomarin. The Vessel is commercially managed by Anosis Maritime S.A., who also employs the crew.

---

[1] *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 153-154 (2d Cir. 2016) (vessel owner's consent to *in rem* jurisdiction sufficient to confer jurisdiction over the lien claim) (citing cases).

2

9. On or about January 14, 2021, Nikomarin entered into a charter party by fixture recap with Bostomar Limited HK ("Bostomar" or Charterer"). Pursuant to the terms of the charter party, Bostomar was responsible for ordering and paying for bunkers for the Vessel.

10. Upon information and belief, on or about February 10, 2021, Bostomar Shipping Pte Ltd[2] ("Bostomar Shipping"), an entity NOT the Charterer, ordered bunkers from Arte, to be delivered to the Vessel at in Singapore between February 16 and 20th, 2021. A true and correct copy of the Bunker Order Confirmation is attached hereto as Exhibit 1.

11. While there is no indication that a express written contract exists between Bostomar, the Charterer, and Arte, the Bunker Order Confirmation between Bostomar Shipping and Arte states that it is governed by the Arte standard terms and conditions for the sale of bunkers, which includes clause 18.1:

> This Contract shall be governed by and construed in accordance with Danish law, except with respect to the existence of the Seller's maritime lien. The General Maritime Law of the United States of America shall always apply with respect to the existence of the Seller's maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

A true copy of the Arte terms is attached hereto as Exhibit 2.

12. Upon information and belief, Arte entered into a fuel purchase or delivery contract with Consort Bunkers Pte Ltd ("Consort") to deliver bunkers to the Vessel.

---

[2] The sales order confirmation and invoice provided by Defendant's Danish legal representative indicates that Arte's customer was Bostomar Shipping Pte Ltd. Upon information and belief, this is a separate and distinct entity from charterer Bostomar Limited HK. Plaintiff does not have any contractual relationship with Bostomar Shipping, the company who ordered the bunkers here.

3

13. Neither the Vessel nor Plaintiff (the Vessel's owner), had knowledge of the contractual relationship, activities or terms and conditions of Consort and were not in contractual privity with Consort.

14. Prior to the fuel delivery, Anosis Maritime SA as manager of the Vessel advised the Vessel's crew members, including the Chief Engineer, that any bunkering shall be for Charterer's account, and that a letter of protest should be issued where necessary to document such notice provided to bunker barge cargo officers. Attached hereto as Exhibit 3 is a true and correct copy of a circular dated February 6, 2018 concerning bunkering operations.

15. On or about February 16, 2021, the bunkering barge M/T HAISOON 33 pulled alongside the Vessel in order to deliver fuel as ordered by Bostomar Shipping. Attached hereto as Exhibit 4 is a true and correct declaration of the Chief Engineer Arnold M. Parale setting forth the sequence of events leading up to, during and after the fuel delivery.

16. Prior to the delivery of bunkers, a meeting between the crew of the Vessel and bunker barge was held. Due to COVID restrictions, no one from the bunker barge boarded the Vessel during the bunkering operations. Ex. 4 ¶ 9.

17. Before commencement of bunkering, during the remote meeting, a verbal express notice of protest and objection to any lien attaching to the Vessel for the fuel was made to Consort. *Id.* The Chief Engineer advised that he would be adding a no-lien stamp to the bunker delivery note. *Id.*

18. The representative of the delivery barge stated that he would not accept the stamp on the bunker delivery note, and advised the Chief Engineer to issue a notice of protest. Ex. 4 ¶ 10. Although the addition of the no lien stamp was rejected, Owners (via the Chief Engineer) continued to protest that no lien was created against the Vessel based on the time charterer's (or

any third party's) order for bunkers, and expressly and unequivocally informed Consort (via the delivery barge personnel) that the fuel supply was not on the credit of the Vessel. *Id.*

19. Despite Owner's express notification, Consort nonetheless proceeded with the transfer of the fuel from the barge to the Vessel as ordered by Charterer, or Bostomar Shipping. Ex. 4 ¶ 11. A bunker delivery receipt was issued by Consort. A true and correct copy of the bunker delivery receipt is attached hereto as Exhibit 5.

20. The bunker delivery receipt does not refer to any terms and conditions, either of Consort or of Arte. *Id.* The Chief Engineer of the Vessel stamped and signed the post-delivery bunker receipt to verify the quantity, type of fuel and specifications of bunker fuel received by the Vessel for the ship's records. *Id.*; *see also* Ex. 4 ¶ 13.

21. Immediately following the delivery of bunkers on February 16, the Chief Engineer memorialized the prior objection that was expressly made at the pre-bunkering meeting in a Letter of Protect dated February 16, 2021 and addressed to Consort, Charterer, and other parties concerned. Ex. 4 ¶ 12. A true and correct copy of the Letter of Protest is attached hereto as Exhibit 6.

22. The Letter of Protest states that "Bunker Barge MT HAISOON 33… refused to accept placement of below "CHARTERER'S ACCOUNT" Stamp on the BDN:

> THE GOODS AND/OR SERVICES BEING HEREBY ACKNOWLEDGED, RECEIVED FOR, AND/OR ORDERED SOLELY FOR THE ACCOUNT OF THE CHARTERERS OF THE M/V NIKOMARIN AND ARE NOT FOR THE ACCOUNT OF SAID VESSEL OR HER OWNERS. ACCORDINGLY, NO LIEN OR OTHER CLAIM AGAINST SAID VESSEL CAN ARISE THEREOF.

Ex. 6.

23. The Notice of Protest was provided to the bunker barge crew along with sealed samples of the fuel. Consort did not sign the Letter of Protest, but the representative of the delivery barge wrote with his own handwriting "Refused to signed" [sic]. Ex. 4 ¶ 12.

24. The above events are confirmed by the declaration of the 3rd Engineer, who was also present. Attached hereto as Exhibit 7 is a true and correct declaration of 3rd Engineer Rustia J. Conchas.

25. An invoice was issued by Arte on February 16, 2021 for the supply of bunkers to the Vessel. The invoice directs payment of $499,007.46 to Arte. A true copy of the bunker invoice is attached hereto as Exhibit 8.

26. Upon information and belief, Bostomar Shipping has not made payment to Arte for the fuel delivered to the Vessel, as is required under the charterparty.

27. Defendant Arte now seeks to recover on the bunker invoice directly against the Vessel pursuant to an alleged U.S. lien.[3] Despite Plaintiff not having any contractual relationship with Arte, by letter dated May 27, 2021 counsel for Arte sent Nikomarin a notice of demand for payment, threatening that "[w]e and our client are monitoring the Vessel's movements closely and will be seeking an arrest of the Vessel unless an amicable solution is reached with you in a timely fashion." A true and correct copy of the letter received from Arte's counsel demanding payment is attached hereto as Exhibit 9.

---

[3] Notably, counsel asserts a maritime lien not only for the principal amount of the fuel delivered, but also accruing interest at the rate of 3% per month pro rata, administration fees, and legal costs. Of course, U.S. caselaw is clear that no maritime lien exists for such amounts. *E.g., Triton Marine Fuels, Ltd. v. M/V Pacific Chukotka*, 671 F. Supp. 2d 753 (D. Md. 2009); *see also Galveston Yacht Service, Inc. v. Yacht Patricia*, 1984 A.M.C. 1719 (S.D. Tex. 1981) (citing *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148 (5th Cir. 1977).

28.     Since the May 2021 letter, counsel for the parties have been engaged in discussions aimed at avoiding arrest of the Vessel and resolving the dispute as to whether Arte holds a maritime lien against the Vessel pursuant to U.S. maritime law.  During those discussions, counsel for Arte has threatened arrest of the Vessel as recently as August 9, 2022.  Upon information and belief, Arte's counsel has been directly involved in representing clients seeking arrest of vessels in the United States and elsewhere so the involvement reinforces the threat of an imminent arrest as it is clear from the failed discussions that there is no prospect of resolving this matter via agreement.

## CLAIM FOR DECLARATORY JUDGMENT

29.     Plaintiff Nikomarin incorporates all prior allegations as if set forth fully herein.

30.     United States maritime law, specifically, the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, provides for a statutory maritime lien for the supply of necessaries (i.e, bunker fuel) where the plaintiff has (a) provided necessaries (b) to a vessel (c) on the order of the owner or a person authorized by the owner.  46 U.S.C. § 31342.

31.     CIMLA further provides a rebuttable presumption that a charterer is empowered with authority to bind a vessel to a maritime lien.  46 U.S.C. § 31341(a).  However, Owner has an absolute right to disclaim such lien prior to any receipt of fuel onboard.

32.     Bostomar Shipping, a third party who is not the charterer of the Vessel, entered into a contract with Arte for the purchase of bunkers.

33.     Owners of the Vessel, Nikomarin, via the Master and Chief Engineer of the Vessel, provided notice to Consort, Arte's agent, that no third parties, including charterer, were authorized to bind the Vessel to a maritime lien, on February 16, 2021, prior to the delivery of the fuel.

34.     This notice included both verbal and written notice memorialized in the Letter of Protest.  Ex. 7; *see also* Ex. 5.  Such notice is sufficient to rebut the presumption of Bostomar or

Bostomar Shipping's authority to bind the Vessel to a maritime lien under CIMLA or any other U.S. law.

35. Arte is bound by the notice provided to Consort via the delivery barge crew, the only agents of the fuel suppliers known to Owners at the time of delivery.

36. Accordingly, Arte does not possess a maritime lien under CIMLA or other U.S. law against the Vessel in connection with the fuel delivery on February 16, 2021.

37. The Vessel was designed for global trading and the Vessel is at risk of imminently arriving in the United States upon instructions of any of its prospective charterers to do so, and upon arrival will face arrest by Defendant claiming to assert a maritime lien. Indeed, Nikomarin as owner does actively market the Vessel as being capable of trading in the United States, and has historically traded in the United States. Arte has stated it is actively tracking the Vessel and will arrest the Vessel. *See* Exhibit 9.

38. Plaintiff has previously offered to post a reasonable amount of security to secure Arte's claims and to submit this dispute to a mutually agreeable forum. However, Arte has refused to allow Plaintiff to avoid the arrest of its Vessel and the resulting damages that arrest would cause, and instead seeks to prejudice Plaintiff by demanding security in excessive amounts which cannot be supported as a matter of law.

39. Based on the foregoing, there is an actual justiciable controversy before this Court, namely whether Arte possesses a maritime lien against the Vessel which Plaintiff has submitted to the *in rem* jurisdiction of this Court.

40. Further, Plaintiff is entitled to submit this controversy to the jurisdiction of this Court as owner of the Vessel, prior to Defendant effecting arrest of the Vessel *in rem* in the United States.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nikomarin Shipping Co Ltd demands judgment against Defendant Arte Bunkering OU, as follows:

(i) Declaring that Arte does not as a matter of law possess a maritime lien for the supply of necessaries pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31301, *et seq.* or other U.S. law.

(ii) Awarding such other and further relief as may be appropriate.

Dated: New York, New York
September 22, 2022

HOLLAND & KNIGHT LLP

By: */s/ James H. Power*
James H. Power
Marie E. Larsen
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
marie.larsen@hklaw.com

*Attorneys for Specially Appearing Plaintiff Nikomarin Shipping Co Ltd, individually and as owner on behalf of M/V Nikomarin (IMO No. 9401506)*