# EXHIBIT 2

arte bunkering IN MASTERLY FASHION

# Arte Bunkering

# General Terms and Conditions of Sale

Edition June 2019

## 1. Definitions

1.1. “Bunkers and Related Services” means the Seller’s fuel, grades, gasolines and any other products and services offered for sale by the Seller.

1.2. “Buyer” means the Vessel and any party requesting quotations, placing orders, purchasing or otherwise contracting to receive the Bunkers and Related Services from the Seller, including but not limited to the Vessel’s owners, charterers, operators, managers, masters, agents and brokers.

1.3. “Conditions” means these general terms and conditions of sale.

1.4. “Contract” means an agreement between the Seller and the Buyer for the supply of the Bunkers and Related Services, always subject to these Conditions.

1.5. “Order Confirmation” means a written confirmation issued by the Seller to the Buyer in respect of an order placed by the Buyer and/or confirmation of a similar agreement.

1.6. “Physical Supplier” means a third party appointed by the Seller to deliver the Bunkers and Related Services to the Vessel.

1.7. “Seller” means “ARTE Bunkering OÜ” and any of its servants, officers, agents, brokers, designated representatives and its subsidiaries or affiliates (such as Arte Bunkering LLC or Arte Bunkering GmbH), wherever applicable.

1.8. “Vessel” is the vessel to which the Bunkers and Related Services are delivered under the Contract.

## 2. Scope

2.1. Integral part. These Conditions constitute an integral part of any Order Confirmation and/or Contract and shall apply thereto, and the Seller’s supply of Bunkers and Related Services shall always be subject to these Conditions. Subject to clause 2.2 below, these Conditions embody all the terms and conditions applicable to the Contract and supersede and cancel in all respects any previous conditions by the Seller.

2.2. No deviation from these Conditions. The Seller shall not be bound by, and the Buyer may not rely on, any statement, representation or warranty, collateral or other piece of communication to the extent that would amount to a deviation from these Conditions, unless and always provided (i) the Seller confirms in writing which part of these Conditions the Parties have agreed to deviate from, (ii) the Seller states explicitly that the agreement to deviate is made in pursuance of this clause 2.2, and (iii) a senior officer or member of management of the Seller (who cannot be a bunker




trader), or the Seller's legal desk, confirms and authorizes the agreement to deviate in writing.

2.3. Severability. Any variance or invalidity of any part of these Conditions shall not prejudice or limit in any way the validity of the remaining Conditions of any Contract made between the Seller and the Buyer. If any provision of the Contract is held to be invalid, void or unenforceable that will not affect the validity, legality or enforceability of any other provision of the Conditions and the any other rights of the Seller under the Contract.

2.4. No waiver. Failure by either party at any time to enforce any of these Conditions shall not be considered as a waiver by such party of such provisions or in any way affect the validity of these Conditions.

2.5. Whole agreement. Together with the Contract and the Order Confirmation, these Conditions constitute the whole agreement made between the Seller and the Buyer, and the Buyer may not rely on any pre-contractual or post-contractual statement, representation or warranty, collateral or other piece of communication to the extent that prejudices the Seller's rights under these Conditions. Further, no statements made outside the Contract, or in any brochures, on websites, in catalogues or in sales literature or advertisements or in any correspondence or oral statements made during negotiations, are intended to have any contractual effect unless inserted specifically into the Contract. For clarity, any deviation from these Conditions will only have effect provided all of the requirements set out in clause 2.2 above are met.

2.6. Amendments. The Seller reserves the right to include, at its discretion, any additional or substitute terms and conditions. Any such additional or substitute terms and conditions shall prior to the time of concluding the Contract be advised by the Seller to the Buyer, either, via written notice, or, in the form set out in clause 19.2.

**3. Owner's Acceptance**

3.1. Acceptance. Bunkers and Related Services delivered under a Contract shall be made for account of the Buyer, which always includes the Vessel and her registered owners. If the legal entity to whom the Order Confirmation is issued is not the registered owner of the Vessel, the master (or any other officer or representative of the Vessel), by signing or stamping the bunker delivery notes or other similar document and by taking delivery of the Bunkers and Related Services, shall be deemed to have full authority on behalf of the Vessel and her registered owners to take delivery of the Bunkers and Related Services and accept these Conditions. The Buyer further warrants that it is authorized as agent to order the Bunkers and Related Services for the Vessel and that the Seller has a lien on the Vessel for any Bunkers and Related Services supplied under this Agreement in accordance with the applicable law (see clause 18.1 below). If the party requesting the Bunkers and Related Services is not the Owner of the Vessel, the Buyer assumes the sole responsibility for communicating the terms and conditions of this Agreement to the Owner of the Vessel prior to the date of delivery.

3.2. "No-lien stamps". The Buyer expressly undertakes not to make any endorsement, complaint or comment (such as the insertion of ''No-lien'' clausing) on the bunker delivery note when presented for signature by the Buyer's representative(s). Any such insertion shall be invalid and of no effect whatsoever. This clause 3.2 reflects the principle embodied under clause 3.1, i.e. that the Bunkers and Related Services are received with full authority from the registered owner of the Vessel.

**4. Terms of Offers and Contracts**

4.1. Quotations, offers and estimates. The Seller's offers, quotations and estimates of prices and other costs are to be understood as being conditional and subject to




availability and alteration and shall include only such products as are expressly specified.

4.2. Formation of Contract. The Contract shall be deemed to have formed when, and only when, the Seller provides the Buyer with an Order Confirmation. The same principle provision shall apply with regard to any subsequent additions and alterations to the Contract.

4.3. Save where otherwise expressly provided for in the Order Confirmation, all particulars notified to the Buyer (e.g. analytical data, delivery times, names of delivery vessels, specifications of the Bunkers and Related Services, etc.) and all documents to which access has been given shall be deemed to contain only those approximate values customary in the trade and do not constitute undertakings or warranties. The Seller reserves the right to make alterations to such particulars or documents.

4.4. FoB and Incoterms. The supply of Bunkers and Related Services is always made on FoB terms, unless another Incoterm is expressly stated in the Order Confirmation. References to FoB or other Incoterms shall be deemed to have the meaning contained in the most recent edition of Incoterms. This Clause and any applicable Incoterms shall always be subject to, and be deemed varied in accordance with, clause 8.13 below.

**5. Prices, Invoicing, Payment, Interest, Collection Costs, Allocation**

5.1. Prices. The Buyer shall pay the agreed prices as set out in the Seller's Order Confirmation and invoice(s).

5.2. Additional expenses and costs. The Buyer shall pay any additional expenses and costs such as barging, overtime, demurrage, wharfage, dockage, port/harbor fees, dues, duties, taxes, levies and other costs, including those imposed by governments and local authorities. The Seller shall endeavor to include, by way of estimates, these additional expenses and costs in the Order Confirmation, however, the Buyer's obligation to pay for such additional expenses and costs shall be decided at the time of supply and stated in the Seller's invoice(s). If any price is quoted as "Delivered", the price includes transportation to the Buyer's Vessel, but does not include demurrage or any other expenses or costs as indicated above.

5.3. VAT and other taxes. All quoted prices and the prices mentioned in the Order Confirmation are exclusive of VAT and other taxes, unless specifically stated. VAT and other taxes and similar charges shall always be promptly paid by the Buyer upon receiving the Seller's invoice.

5.4. Due date for payment. Payment shall be made by the Buyer in full, as directed by the Seller, no later than on the due date stated in the Seller's invoice, free of bank charges and other cost, into the Seller's nominated bank account.

5.5. Currency. Unless otherwise specified in the Order Confirmation or in the Seller's invoice, prices shall be in US dollars and shall represent only the purchase price for the Bunkers (typically quoted in USD per metric ton). Payment shall always be made in the invoiced currency.

5.6. No set-off. Payment shall be made in full, without any set-off, deduction and/or discount, unless agreed in writing prior to payment being made.

5.7. Interest and administration charges. In the event that payment is not received by the Seller by the due date the Seller is entitled to interests at the rate of 3 (three) percent per month pro rata compounded without prejudice to any other rights or remedies available to the Seller. The Seller shall also be entitled to charge a delayed payment




administration fee of USD 1.50 per metric ton supplied with a minimum administration fee of USD 500.00.

5.8. Collection costs. The Seller's collection costs shall be solely for the Buyer's account. If the Buyer fails to make payment in full on the due date for payment, the Seller will take legal action (such as ship arrest and/or arbitration) to collect the overdue payment. The Seller's costs and expenses incurred in connection with the collection of such overdue payments shall be indemnified by the Buyer upon demand from the Seller. These costs and expenses include, but are not limited to, interest charges, internal costs, and external costs such as expenses to lawyers, debt collectors or other consultants, court fees, costs for translating documents, bailiff's or Marshall's fees and any collection costs of whatsoever nature. The Seller shall be entitled to invoice those costs from time to time.

5.9. Allocation of payments. All payments received by the Seller shall be applied to settle, first, any overdue interest and administration charges (accrued in accordance with clause 5.7 above), then, to any collection costs incurred (such costs to be indemnified by the Buyer as set out in clause 5.8 above), and, then, to principal.

5.10. Anticipatory breach. If the Buyer's right to possession of the Bunkers and Related Services ceases as provided for in clause 17.3, the Seller shall be entitled to demand all payments settled immediately, whether or not such payments have fallen due under the Seller's invoice.

5.11. Security. The Seller shall at all times be entitled to require that the Buyer gives security for the proper performance of all of the Buyer's payment obligations. Security shall be given to the satisfaction as deemed sufficient by the Seller. Failure to immediately provide such security shall entitle the Seller, inter alia, to suspend further performance of any and all orders and to assert any other right and remedy available under the Contract and under the law applicable.

**6. Quality and Samples – claims**

6.1. Quality. The agreed quality shall always be limited to the quality description set out in the Order Confirmation; for instance by reference in the Order Confirmation to the quality standard term ISO-8217:2010, which is mentioned in this clause for illustration purposes only. If the Order Confirmation does not contain such description and does not contain any other similar terms of quality, the Bunkers and Related Services shall be of the quality that is generally offered by the Seller to its customers at the time and place of delivery and subject to being available for delivery at the agreed place of delivery.

6.2. No implied warranties. Any implied conditions, obligations and warranties, including the warranties of merchantability, fitness for a particular purpose and/or any similar warranty, are expressly excluded and disclaimed and shall not apply.

6.3. The Buyer's responsibility. The Buyer, having greater knowledge than the Seller of the Buyer's own requirements and needs, shall have the sole responsibility for the prior selection of the particular grade(s) and acceptance thereof. The Order Confirmation is deemed to describe the type of Bunkers and Related Services demanded by the Buyer, and the Buyer shall immediately upon receipt of the Order Confirmation notify the Seller of any wrongful description in the Order Confirmation compared to the Buyer's demand. In case such notice is not provided to the Seller, the Order Confirmation's description of quality shall be deemed to be binding, as shall all other terms and descriptions set out in the Order Confirmation.

6.4. Agreed procedure for sampling and testing of samples. The following clauses shall exclusively govern the taking of samples and the testing of such samples:

A. The Seller (typically through its physical supplier) shall arrange for four (4) representative samples of each grade to be drawn throughout the entire bunkering operation. The Buyer's representative on the Vessel has the responsibility to witness that such samples are drawn correctly and shall confirm his witnessing thereof and also confirm the proper and correct sealing by signing the labels of the sample bottles. The Vessel's representative's signature on the bunker delivery note shall be deemed to evidence such confirmation.

B. In case that dripsampling is not available onboard the bunker barge, tanktruck and/or shore tank that is used for delivery, samples shall be taken as a composite of each tank from which supplies are made, onboard the barge (respectively at the shore tank or tanktruck), divided with 1/3 from each the top, mid and bottom of the tanks.

C. The samples shall be securely sealed and provided with labels showing the Vessel's name, identity of delivery facility, product name, delivery date and place and seal number, authenticated with the Vessel's stamp and signed by the Seller's representative and the master of the Vessel or his representative. The seal numbers shall be inserted into the bunker delivery note, and by signing the bunker delivery note both Parties agrees to the fact that the samples referred to therein are deemed valid and taken in accordance with the requirements set out herein.

D. Two (2) samples shall be retained by the Seller for forty-five (45) days after delivery of the Bunkers and Related Services, or if requested by the Buyer in writing at the time of delivery, for as long as the Buyer reasonably requires. The other two (2) samples shall be retained by the Vessel, one of which being dedicated as the MARPOL sample in accordance with the relevant rules and regulations in force at the time of supply.

E. In the event of a dispute regarding the quality of the Bunkers delivered, the samples drawn pursuant to these clauses shall be conclusive and final evidence of the quality of the Bunkers and Related Services delivered to and received by the Vessel.

F. One, and only one, of the samples retained by the Seller shall be forwarded to an independent laboratory to perform a set of tests, the result of which is to be made available to both parties. THOSE TEST RESULTS SHALL BE FINAL AND BINDING UPON BOTH PARTIES AS TO THE PARAMETERS TESTED. The parties are to use best endeavors to agree on the independent laboratory to perform the tests. If, however, no agreement can be reached on the choice of laboratory within 3 calendar days of the Buyer being advised of the Seller opting to have a sample tested, the Seller is at liberty to send the sample to a reputable and independent laboratory of its choice for the tests to be conducted, AND THOSE TEST RESULTS WILL BE FINAL AND BINDING upon the Buyer and the Seller as set out above.

G. The seal on the samples must be breached only in the presence of both parties unless, either, (i) the Buyer has declared in writing that they will not be present at the time and place for testing by the laboratory (as per the clause above), or, (ii) the Seller proceeds to send the sample for testing based on no agreement reached (as further described in the clause above), or if such agreement has been reached but the Buyer for whatever reason fails to be present at the appropriate time and place. Both parties shall have the right to appoint independent person(s) and/or surveyor(s) to witness the seal breaking and the testing.

H. No other samples than the ones taken under the procedure set out above shall be allowed as evidence. If any of the seals have been removed or tampered with, such sample(s) shall be deemed to have no value as evidence.

I. Any eventual samples drawn by the Buyer's or the Vessel's personnel, either during bunkering or at any later date after bunkering, shall not be valid as evidence. The fact that such samples may eventually bear the signature of personnel on board the barge or tank truck or other delivery conveyance shall have no legal significance as such local personnel have no authority to bind the Seller to different contractual terms.

J. The Buyer shall never be entitled to debunker unless preapproved in writing by the Seller and always provided that the Seller's and the Physical Supplier's instructions for debunkering are strictly adhered to. All costs and expenses related to debunkering, storage, etc., shall always be borne by the Buyer.

6.5. Quality claims – notification and time-barring. Any claims relating to the quality of the Bunkers and Related Services delivered shall be notified by the Buyer and/or the Vessel to the Seller within 7 (seven) days after completion of delivery in the form of a written letter of protest with full supporting documentation. If the Buyer or the Vessel's master fails to present such letter of protest to the Seller, SUCH CLAIM SHALL BE DEEMED TO HAVE BEEN WAIVED AND SHALL BE ABSOLUTELY BARRED FOR ALL PURPOSES. In addition, any and all claims of the Buyer that have been notified to the Seller shall become time-barred unless arbitration has been commenced as per clause 18 below and served on the Seller within 12 (twelve) months from the date of delivery. The date of delivery is set out in the bunker delivery note.

6.6. Determination of quality – evidence. Any claims relating to quality shall be solved amicably or in arbitration in accordance with clause 18 below. The evidence obtained under the exclusive procedure that governs the taking of samples and the testing of such samples (the full procedure is detailed in clause 6.4 above) shall be final and binding on the parties and shall accordingly be guiding for the arbitral tribunal's decision in respect of the evidence relied on by the tribunal to assess quality.

6.7. No liability for commingling. The Seller shall have no liability whatsoever for claims arising in circumstances where the Buyer may have commingled the Bunkers on board the Vessel with other fuels or similar products.

**7. Quantity – claims**

7.1. Quantity. All quantities referred to in the Contract are understood to be approximate with a margin of 10 per cent more or less in the Seller's option.

7.2. Determination of quantity – evidence. Except where government regulations or local authorities determine otherwise, the quantity of the Bunkers delivered shall be determined solely from the official gauge/sounding of the delivering barge, road wagon, or rail tank car, delivery note for drum deliveries, or by gauging in the Seller's shore tank or by the Seller's oil meter, at the Seller's election. The Buyer may be present or represented by a properly accredited agent when quantity measurements are taken. If the Buyer is not present or represented, the Seller's determination of quantities shall be deemed to be FINAL AND BINDING ON THE PARTIES. QUANTITIES CALCULATED FROM THE VESSEL'S SOUNDINGS SHALL NOT BE CONSIDERED.

7.3. Quantity claims – notification and time-barring. In the event of complaint on the quantity, the Buyer or the master of the Vessel shall give the Seller a letter of protest separately, followed by a complaint in detail to the Seller, setting out the exact quantity(ies) claimed short supplied, and with full supporting vouchers, in writing within 7 (seven) days thereof, failing which, any such claim by the Buyer shall be extinguished as non-existent, and the Buyer shall be deemed to have expressly waived any such claim against the Seller, the relevant claim being time barred, and the Seller's weight and measurements shall be conclusive evidence of the quantity




of Bunkers delivered. In addition, any and all claims of the Buyer that have notified to the Seller shall become time-barred unless arbitration has been commenced as per clause 18 below and served on the Seller within 12 (twelve) months from the date of delivery. The date of delivery is set out in the bunker delivery note.

**8. Delivery and Risk of Delay**

8.1. Approximate times. The time of delivery, as given by the Seller, has been given as an approximate time, unless it has been otherwise specifically agreed in writing between the parties.

8.2. 72 hours' notice. The Buyer shall always notify the Seller at least 72 hours (Saturday, Sunday and local holidays excluded) in advance of the Vessel's readiness to take delivery of the exact quantity of Bunkers to be delivered to enable the Seller to make the necessary arrangements for the delivery.

8.3. Range for delivery. The Order Confirmation includes the earliest estimated time of the Vessel's arrival (ETA) as advised by the Buyer. The Vessel shall always begin to take delivery within the ETA provided for in the Order Confirmation, and, if the ETA listed in the Order Confirmation exceeds 3 (three) calendar days, the Vessel shall always begin to take delivery of the Bunkers and Related Services within the first 3 (three) calendar days. The Contract price shall be valid only for deliveries begun within the ETA stated in the Order Confirmation, or, within the 3 (three) calendar day-period if such period applies as provided for in this clause. If the Buyer begins to take delivery or requests delivery to begin beyond these periods, as applicable, the Seller shall be entitled to amend the agreed price(s) under the Contract. This entitlement is without prejudice to any claim the Seller may have against the Buyer for failing to take timely delivery.

8.4. Failure to take delivery. If the Buyer fails to take delivery of the Bunkers and Related Services, or any part thereof, as provided for under clause 8.3 above, the Seller shall be entitled, at the Buyer's risk and expense, either, to transport the Bunkers and Related Services back to storage, and/or, to sell the Bunkers and Related Services at the price available in the market and claim damages against the Buyer, without prejudice to the Seller's other rights under the Contract. The Seller shall also be entitled to charge a minimum cancellation fee of 5% (five) of the agreed prices in case the Buyer fails to take delivery as provided for herein.

8.5. Delivery circumstances permitting. The Vessel shall under all circumstances be bunkered as promptly as the prevailing circumstances permit, having regard to circumstances such as weather, congestion affecting the delivery facilities of the Seller, its Physical Suppliers or other agents and subcontractors and to prior commitments of barges or other delivery means. The Seller and/or the Physical Supplier shall not be liable for any consequences or any time lost due to the Vessel having to wait for berth for bunkering or for completion of bunkering, and unless otherwise agreed in writing, the Seller shall not be obligated to deliver prior to the nominated date or spread of dates. The Seller is not responsible for delays caused by local customs, pilots, port- or other authorities.

8.6. Shortage of supply. If the Seller, for any reason and in its sole discretion, anticipates there may be such a shortage of Bunkers and Related Services at any port of place that it may be unable to meet the demands of all its buyers, the Seller may allocate its available and anticipated supply among its Buyers in such a manner as it may in its sole discretion determine. The Buyer may raise no claim against the Seller in these circumstances.

8.7. Buyer's cause of delay. If the Buyer causes delay to the Seller's and/or the Physical Supplier's delivery when receiving the Bunkers and Related Services, the Buyer shall be deemed to be in breach of contract and be liable accordingly.




8.8. Permitted tanks only. The Seller shall not be required to deliver the Bunkers and Related Services into any of the Vessel's tanks which are not permitted for use with such product and/or which are not normally used for such product.

8.9. Port Licenses and permits. If any government or local port license, permit or the like is required for deliveries to be made hereunder, each party must comply and facilitate a smooth delivery. In case of the Buyer's failure to comply, the Buyer shall be deemed to have breached the Contract under clause 8.7 above. In addition, the Seller shall not be required to deliver the Bunkers and Related Services if any customs and/or other government permit required for such purpose has not been obtained in due time before the delivery.

8.10. Modes for delivery. Delivery shall be made either from a shore terminal or by barge or by any other accredited methods of delivery, where such deliveries are available from time to time. In the case of more than one method of delivery being available, The Seller shall at its sole discretion select one, providing that it does not breach any other conditions of the Contract.

8.11. The Buyer's obligation to provide a near and safe berth, position or anchorage. The Buyer shall provide free of cost a clear and safe berth, position or anchorage alongside the Vessel's receiving lines. The Seller shall be under no obligation to make deliveries when a clear and safe berth, position or anchorage is not available, which shall be solely at the discretion of the master of the Physical Supplier's bunker barge. The Buyer shall indemnify the Seller against all claims and expenses for any loss, damage, demurrage or delay caused to the Seller's delivery equipment, irrespective of whether the circumstance causing the loss, damage, demurrage or delay was within the control of the Buyer, its agents and employees, or his local representative.

8.12. Assistance from the Buyer. The Buyer shall make all connections and disconnections between pipelines or delivery hoses and Vessel's intake lines and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly all deliveries hereunder.

8.13. Transfer of risk. Delivery shall be deemed completed and all risk and liabilities, including without limitation loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage to the Bunkers and Related Services delivered and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties, shall pass to the Buyer as the Bunkers and Related Services pass the flange connecting the pipelines or delivery hoses with the intake lines of the Vessel. Bunkers and Related Services supplied by any other methods shall be considered to be delivered on these terms when passing the Vessel's rail.

8.14. Bunker delivery receipt. Upon completion of the delivery to the Vessel, the master, or other authorized representative of the Vessel, shall confirm the delivery on behalf of the Vessel and the Buyer by signing a bunker delivery receipt provided by the Physical Supplier. The Seller shall not be deemed to have any constructive knowledge of the authority or lack of authority of any purported local representative of the Buyer and shall be under no duty to verify authority of such purported representative.

8.15. Normal working hours. Delivery shall be made during normal working hours. Unless otherwise agreed, deliveries outside normal working hours shall be subject to additional costs, which shall be borne by the Buyer.

**9. Health, Safety and Environment**

9.1. Health and safety requirements. It shall be the sole responsibility of the Buyer to comply, and advise its personnel, agents and/or customers to comply, both during and after delivery, with all health and safety requirements applicable to the Bunkers

and Related Services supplied. The Seller accepts no responsibility for any consequences arising from the Buyer's failure to comply with such health and safety requirements. The Buyer acknowledges familiarity with the hazards inherent in the nature of any petroleum products and shall protect, indemnify and hold the Seller harmless against any claims and liability incurred as a result of the Buyer, or any user of the Bunkers and Related Services, or its customers failing to comply with the relevant health and safety requirements.

9.2. Environment. The Seller and the Physical Supplier shall have no risk of harm to the environment. In the event of any leakage, spillage, overflow of bunker's causing or likely to cause pollution occurring at any stage, the Buyer shall, regardless as to whether the Buyer, the Seller or any third party is responsible, immediately take such action as is necessary to affect clean up, and, failing prompt action, the Buyer (who hereby warrant that they have been authorized by the Vessel's registered owners) hereby authorizes the Seller to take whatever measure(s) the Seller deems necessary to efficiently clean-up and restore the environment at the Buyer's cost and expense. The Buyer shall defend, indemnify and hold the Seller and/or the Physical Supplier harmless against any claim or liability arising out of any leakage, spillage or overflow, unless such leakage, spillage or overflow shall be proven to be wholly caused by the Seller's and/or the Physical Supplier's gross negligence.

9.3. Regulations. The Buyer warrants that the Vessel at all material times complies with all applicable national and international regulations. It shall be the responsibility of the Buyer and the master of the Vessel to notify the Seller of any special condition, difficulties, peculiarities, deficiencies or defects with respect to the Vessel or any part thereof, which might adversely affect the delivery of Bunkers and Related Services. The Seller has the right to refuse to deliver the product to the vessel if it's deemed probable in the Sellers sole discretion that such delivery will result in adverse consequences of any kind whatsoever.

**10. Indemnity**

10.1. The Buyer shall defend, indemnify and hold the Seller harmless with respect to any and all liability, loss, claims, expenses, or damage the Seller may suffer or incur by reason of, or in any way connected with, the fault or default by the Buyer and/or its agents in the purchase of, receipt, use, storage handling or transportation of the Bunkers and Related Services in connection with each bunker transaction.

**11. Warranty**

11.1. Seller's warranty. Subject to clauses 11.2, 11.3 and 11.4, the Seller warrants that at the time when the Bunkers and Related Services were delivered such Bunkers and Related Services conform to the Contract and were delivered with reasonable skill and care.

11.2. The Buyer's remedy for the Seller's breach of warranty. In the event of a breach by the Seller of the warranty in clause 11.1, the Seller shall only be obliged (and shall have no further liability in contract, tort, law or otherwise) at its option either to:

A. Credit the price (if already paid) attributable to the non-conforming Bunkers and Related Services; or

B. Replace and/or redeliver the non-conforming Bunkers and Related Services, provided that any Bunkers and Related Services are returned to the Seller in their delivered state at the Buyer's expense. The Seller shall especially not be responsible for debunkering or for any other form of offloading of the Bunkers and Related Services, nor for storage, transportation, customs clearing and/or any other precondition necessary to return the non-conforming Bunkers and Related Services.




This clause 11.2 shall be the Buyer's only remedy and in lieu of any other rights and remedies which might otherwise be available to the Buyer. Any repair, rectification or replacement of the Bunkers and Related Services will be warranted on the terms set out in this clause 11.2.

11.3. No liability beyond warranty. All conditions, warranties or other terms, whether express or implied, statutory or otherwise, inconsistent with the above clause 11.1, are hereby expressly excluded to the fullest extent possible.

11.4. Exclusions from the scope of warranty. The warranty given in clause 11.1 will not apply:

A. Where the warranty claim arises from normal wear and tear, the Buyer's willful damage or willful misconduct, the Buyer's negligence, abnormal working conditions, use for unintended purpose, misuse, abuse or lack of maintenance;

B. If the Buyer fails to follow the Seller's and/or the Physical Supplier's specific advice or general instructions (whether oral or in writing);

C. Where the Bunkers supplied are debunkered by the Buyer, unless the Buyer and the Vessel strictly adheres to the Seller's and the Physical Supplier's instructions;

D. If the total price for the Bunkers and Related Services has not been paid on the due date for payment in accordance with the Seller's invoice;

E. If the Buyer has not notified the Seller of the warranty claim within 14 days after the time the Buyer discovered, or ought to have discovered, the material circumstances which gave rise to the claim; and

F. In the event the Buyer has not complied with the notification and time-barring provisions set out in clauses 6.5 and 7.2 above.

**12. Limitation of Liability and Consequential Damages**

12.1. Limitation of liability. Considering that the Seller undertakes certain warranty obligations (as set out in clause 11), the Seller shall be under no liability whatsoever to the Buyer for any loss, damage, delay or expense incurred of whatsoever nature, whether direct or indirect, including but not limited to (i) any loss of profit, hire, business contracts, trading, revenues or anticipated savings, or (ii) for damage to the Buyer's reputation or goodwill, or (iii) for any loss resulting from any claim made by any third party, or (iv) for any special, indirect, consequential or incidental loss or damage of any nature whatsoever.

12.2. The Seller's liability is limited to the price for the Bunkers and Related Services. In the event the Seller is held liable for any claim, loss, damage, damages, cost, expenses, etc., the Seller's liability shall never exceed the price for the Bunkers and Related Services delivered under the Contract as set out in the Seller's invoice.

12.3. The Buyer's liability. The Seller is entitled to recover from the Buyer all direct and indirect losses, costs and expenses incurred as a consequence of the Buyer's breach of contract, and the Seller may terminate the Contract, in whole or in part, at its own discretion upon the breach of any provision hereof by the Buyer.

**13. Breach and cancellation**

13.1. Breach. The Seller's liability in case of breach shall be limited under the provisions herein, including without limitation clauses 11 and 12.




13.2. Cancellation. Without prejudice to any other remedies and rights, the Seller shall have the option immediately to cancel the Contract, in whole or in part, or to store or procure the storage of the Bunkers and Related Services, in whole or in part, for the account and risk of the Buyer, and to charge the Buyer the expenses thereby incurred, or to hold the Buyer fully to the Contract, or take any other measures which the Seller deems appropriate, without prejudice to its rights of indemnification, without any liability on the part of the Seller, in any one of (but not limited to) the following cases:

A. when the Buyer, for whatever reason, fails to take timely delivery of the Bunkers and Related Services, in whole or in part, at the agreed place for delivery; or

B. when the Buyer fails, in whole or in part, to pay any amount due to the Seller and/or provide security as set out in clause 5.11; or

C. when, before the date of delivery, it is apparent in the opinion of the Seller that the financial position of the Buyer entails a risk to the Seller; or

D. when, in case of force majeure (as defined in clause 15.1 below), the Seller is of the opinion that the execution of the agreement should be cancelled; or

E. when the Seller, in its sole discretion, has reasonable grounds to believe that any party, entity or person connected to the supply of the Bunkers and Related Services is/are

(i) Iranian(s), Syrian(s) or North Koreans; or

(ii) related in any way to Iran or Iranian(s), to Syria or Syrian(s) or to North Korea or North Korean(s); or

(iii) listed on the US OFAC Specially Designated Nationals and Blocked Persons List (or similar lists from time to time); or

(iv) covered by any US-, UN- and/or EU sanctions; or

(v) covered by any sanctions of any other jurisdiction and/or administration.

In either of the above cases the Seller cannot be held liable for any loss, delays, claims or damage arising from the cancellation.

**14. Anti-corruption and bribery**

14.1. The Buyer acknowledges that any Contracts and any actions related to such Contracts as well as any interaction with third parties related to such Contract are covered by certain anticorruption laws and regulations, including but not limited to the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. Therefore, the Buyer shall comply with all applicable anticorruption laws and regulations and agrees that the Buyer has not, and will not, offer, promise, pay or authorize the payment of any money or anything of value, or take any action in furtherance of such a payment, whether by direct or indirect means, to any public official or private individual to influence the decision of such person in the performance of his duties to a government or to his company. The Buyer shall be fully liable in case of breach of this clause and shall pay for any and all claims, damages, costs or losses incurred by the Seller.

**15. Force Majeure**

15.1. The Seller and the Physical Supplier. Neither the Seller nor the Physical Supplier shall be liable for any loss, claim, damage, delay, demurrage, etc., due to any delay or failure in their performance under the Contract

A. by reason of compliance with any order or request of any government authority or person purporting to act therefore; or

B. when supply of Bunkers and Related Services or any facility of production, manufacture, storage, transportation, distribution or delivery contemplated by the Seller or the Physical Supplier is interrupted, delayed by congestion or for other reasons not available; or

C. by unavailability of the Bunkers and Related Services and/or barge equipment or by inadequate resource for any cause whatsoever which interruption, delay, unavailability or inadequate resources is not within the immediate control of the Seller, including (without limitation) if such is caused wholly or partly by labor disputes, strikes, stoppages, lock-out, governmental intervention, wars, civil commotion, riot, quarantine, fire flood, earthquake, accident, storm, swell, ice, adverse weather or any act of God; or

D. by any loss of, alteration of, or damage to, or any form of hacking or reduction in the functionality, availability or operation of the internet, or other forms of telecommunication, or of a computer system, hardware, program, software, data, information repository, microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Seller, the Buyer, the Physical Supplier or any other third party (cyber risks); or

E. any other similar circumstances;

either of which shall be considered force majeure. Neither the Seller nor the Physical Supplier shall be required to remove any such cause or replace any affected source or supply or facility if doing so shall involve additional expense.

15.2. The Buyer. If the Buyer exercises reasonable diligence, the Buyer shall not be liable for failure to receive any particular delivery of Bunkers and Related Services if prevented therefrom by force majeure (as set out in clause 15.1).

**16. Assignments**

16.1. The Seller's right of assignment. The Seller may assign/transfer any/all of its right and obligation under the Contract.

16.2. No assignment for the Buyer. The Buyer shall not assign/transfer any/all of its right under the Contract, without written consent of the Seller.

**17. Title**

17.1. Retention of title. The Bunkers and Related Services shall remain the Seller's property and title therein shall not be transferred to the Buyer until the Seller has received payment in full in accordance with the Seller's invoice(s) and until the Seller has paid the Physical Supplier in full.

Until that time, the Buyer shall

A. hold the Bunkers and Related Services as bailee for the Seller and shall not be entitled to use them other than for the propulsion of the Vessel; and

B. store them in such a way that they can be identified as the Seller's property and shall keep them separate from the Buyer's own property and the property of any other third party; and

C. keep them at the Buyer's risk and expense from the time of delivery and until the time when the Seller takes redelivery or repossession; and

D. insure them against any loss or damage, and in the event of such loss or damage it shall notify the relevant insurers that the insured property is owned by the Seller, and even if the Buyer receives any such insurance proceeds, the Buyer shall always hold the proceeds of such insurance on behalf of the Seller as trustee of the Seller and shall request the Seller to inform to which of the Seller's bank accounts the proceeds may be wired to.

17.2. Passing of title. The transaction contemplated under these Conditions is not a contract for the sale of goods but a sui generis contract. The Contract is not subject to any express or implied terms for the transfer of title as a condition to the Buyer's obligation to make payment on the due date. The Buyer has agreed to contract not for the transfer of property in the whole of the Bunkers and Related Services but for the delivery of a certain quantity of Bunkers and Related Services which the Buyer has an immediate right to use for the Vessel's propulsion only against not having to pay the price for the Bunkers and Related Services until the period of credit has expired.

17.3. Cessation of the Buyer's right of possession and usage. Notwithstanding clause 17.1 above, the Buyer's rights to possession and use of the Bunkers and Related Services shall cease if

A. the Buyer is declared bankrupt; or

B. the Buyer enters into any other form of insolvency proceedings, such as US Chapter 11 proceedings or similar proceedings in other jurisdictions, such as rehabilitation or reconstruction proceedings or any other form of proceedings in contemplation of a structural debt arrangement being made vis-à-vis the Buyer and its creditors; or

C. the Buyer makes any proposal to any of its creditor(s) for a reorganization, rehabilitation or any other form of voluntary arrangement; or

D. a receiver, liquidator, administrator or the like is appointed in respect of the Buyer's business; or

E. the Buyer breaches any of its financial covenants or warranties provided by the Buyer to its financiers.

Upon cessation of the Buyer's right to possession of the Bunkers and Related Services as provided for herein, the Buyer shall at his own expense make the Bunkers and Related Services available to the Seller and allow the Seller to repossess them. The Buyer hereby grants the Seller, his agents and employees an irrevocable license to enter any premises where the Bunkers and Related Services are stored in order to repossess them at any time.

**18. Governing law and arbitration**

18.1. Law. This Contract shall be governed by and construed in accordance with Danish law, except with respect to the existence of the Seller's maritime lien. The General Maritime Law of the United States of America shall always apply with respect to the existence of the Seller's maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment




or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

18.2. Arbitration. Any dispute arising out of or in connection with a Contract, including any disputes regarding the existence, validity or termination thereof, shall be settled by arbitration under the rules of arbitration procedure adopted by the Nordic Offshore and Maritime Arbitration Association ("Nordic Arbitration") in force at the time when such arbitration proceedings are commenced. Nordic Arbitration's Best Practice Guidelines shall be taken into accountThe arbitral tribunal shall be composed of three arbitrators, unless the total value of the Seller's principal claim(s) does not exceed USD 500,000 in which case the arbitral tribunal shall consist of a sole arbitrator. The place of arbitration shall be Tallinn or Copenhagen. The language to be used in the arbitration shall be English.

18.3. Enforcement of rights. Nothing in these clauses shall, in the event of failure to pay or in the event of any other form of breach by the Buyer, preclude the Seller from taking any such legal action as it shall in its sole discretion consider necessary to enforce, safeguard or secure its rights under the Contract. Such action may be taken in any court or tribunal in any state or country and will include but not be limited to action taken to enforce the Seller's rights and/or to obtain security (such as the arrest of the Vessel or of ships or attachment of other assets). Following any such legal action as mentioned herein, the Seller may bring substantive legal action in any competent court against the Buyer or against the owner of the arrested vessel or other attached asset.

**19. Entry into force and availability**

19.1. Entry into force. These Conditions enter into force with effect from 10 June 2019 at 00.01 hours (GMT) and shall apply to all Contracts and Order Confirmations agreed on 10 June 2019 or hereafter.

19.2. Availability.These Conditions are available at the website http://artebunkering.com/terms_and_conditions/, on which site the Seller may public amendments, alterations, changes or verifications to the Conditions. Such amendments, alterations, changes or verifications are deemed to be a part of the entire Conditions once same have been published on the said website.